UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALI BAZZI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:08-CV-2034 (CEJ) |
| ) | |
| TYCO HEALTHCARE GROUP, LP, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motions of defendant Tyco Healthcare Group LP for summary judgment and for sanctions. Plaintiff opposes the motions, and the issues have been fully briefed.

Plaintiff Ali Bazzi brings this action for wrongful discharge against defendant Tyco Healthcare Group, LP, alleging that his termination violated the public policy of the State of Missouri. Plaintiff alleges that the termination of his employment was a result of protected whistle-blowing activity. Plaintiff also alleges that his termination was due to his refusal to perform an act that would have been in violation of Section 501 of the Food and Drug Act, 21 U.S.C. §351. Plaintiff seeks actual and punitive damages along with an award of reasonable attorneys' fees and costs.

I.   **Background**

Plaintiff was employed by Tyco as an organic chemist at the company's pharmaceutical manufacturing plant in St. Louis, MO. Plaintiff held the position of validation manager. His duties included overseeing the validation process related to the production and manufacturing of heavily regulated pharmaceutical substances. The validation process tests these substances to ensure that each batch meets

standards for quality, purity and compliance with federal law. Plaintiff's employment with defendant was terminated on November 1, 2007.

Naltrexone Hydrochloride is a pharmaceutical drug manufactured by defendant. Reports generated on the validation of each batch of the drug were to be signed by various managers prior to being validated or "closed." Plaintiff's duties included overseeing the validation process for Naltrexone as well as closing the Naltrexone validation reports for each batch of the drug. As validation manager, plaintiff reported directly to Eldon Henson, director of the quality group at Tyco.

Plaintiff alleges that his termination was a result of actions taken by him relating to concerns about the Naltrexone validation process. He claims that he refused to close validation reports for Naltrexone, because he believed there had been serious deviations in the validation process. He also asserts that he declined to follow Eldon Henson's directive to him that the Naltrexone validations be closed despite plaintiff's belief that they were not properly validated. Finally, plaintiff claims that he directed his subordinate, Marvin Darling, to draft and distribute a memo relating to his concerns with the validation of the Naltrexone batches. Plaintiff asserts that these activities constituted "whistle-blowing" and that his termination due to these activities contravenes public policy. As evidence of the specific public policy violated, plaintiff cites to the Food and Drug Act, specifically 21 U.S.C. §351, which prohibits the distribution or sale of an adulterated substance.

In addition to his claim that he was terminated for whistle-blowing activities, plaintiff alleges that his employment was terminated due to his refusal to perform an illegal act. Plaintiff has testified that he "declined" to sign interim Naltrexone validation reports despite a request by supervisor Eldon Henson to do so. (Plaintiff's Dep. at 74). Plaintiff also claims that signing these reports would have violated the Food and Drug

Act, 21 U.S.C. §351, by releasing an adulterated product. Plaintiff has testified that he was terminated about two months after he declined to sign the validation report. He concedes that he did not communicate his intention to withhold his signature from the report to Eldon Henson.

Defendants contend that plaintiff was terminated because he removed items from a co-worker's office without permission and then lied about it during the subsequent investigation. Plaintiff was observed taking the items by a company security camera. Plaintiff admitted in his deposition that he did in fact remove the items without permission and then denied doing so when initially confronted by Eldon Henson and Krista Miller, who worked in human resources. Plaintiff requested and was sent a service letter pursuant to Missouri law on February 6, 2008, citing the above incident as the basis for his termination.

Plaintiff testified that he believed he would not have been terminated on November 1, 2008 if he had not been caught stealing and subsequently lying about his actions. Plaintiff asserts that this incident was merely a pretext for termination of his employment, which he believes was at least partly due to his Naltrexone concerns. Plaintiff testified that his termination would have occurred eventually as it was "only a matter of time." (Plaintiff's Dep. at 65-67)

Plaintiff admits that he did not report any of the suspected violations in the Naltrexone process to any third parties or governmental agency despite his regular communication with the FDA. Plaintiff further concedes that he did not voice his concerns to any of his superiors within the company besides Eldon Henson even though it was his job to bring up concerns about the validation process and he was encouraged to do so. No investigation or citation related to plaintiff's Naltrexone concerns ever occurred.

Plaintiff filed a charge of discrimination with the Missouri Commission on Human Rights on November 9, 2007, claiming that he was unlawfully terminated because of his age and national origin. Although plaintiff testified that he continues to believe that discrimination was a factor in his termination, he does not raise this issue in his amended complaint.

Plaintiff originally filed this action in the Twenty-Second Judicial Circuit Court of Missouri (City of St. Louis) on November 14, 2008. Defendant removed the action to this Court pursuant to 28 U.S.C. § 1332 on December 12, 2008. Defendant filed the instant motion for summary judgment on December 10, 2009. Plaintiff opposes the summary judgment motion and has denied the majority of defendant's statement of undisputed material facts. In response, defendant has filed a motion to strike plaintiff's factual denials as well as many of plaintiff's own statement of undisputed material facts. Both motions have been extensively briefed.

II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. Agristor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio

Corp., 475 U.S. 574, 586-587 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Citrate, 477 U.S. 317, 322 (1986).

III. Discussion

Defendant argues that summary judgment is appropriate on each of plaintiff's claims as a matter of law. Plaintiff contends that material factual disputes render summary judgment inappropriate. Defendant's motion to strike asserts that its facts are not subject to substantial dispute, as plaintiff contends, and that plaintiff's denials and statement of facts is based upon evidence which is inadmissible or irrelevant. Defendant asks that plaintiff's factual disputes be stricken to the extent they are improperly supported. The court finds most of the parties' factual disputes to be irrelevant but will address those that are necessary as they relate to the issues below. Those parts of defendant's motion to strike not specifically addressed herein are denied.

A. The Public Policy Exception to At-Will Employment

Defendant contends that plaintiff has not submitted admissible evidence sufficient to show his activities warrant protection from wrongful termination under Missouri common law. Plaintiff alleges that his activities did constitute whistle-blowing

–5–

or a refusal to perform an illegal act and provide a basis for a wrongful termination claim.

The parties do not dispute that plaintiff's employment was at-will. Missouri has a well established doctrine of at-will employment. Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661 (Mo. 1998). Generally, an employer may terminate an at-will employee "for any reason or for no reason." Crabtree v. Bugby, 967 S.W.2d 66, 70 (Mo. 1998); McCoy v. Caldwell County, 145 S.W.3d 427, 429 (Mo. 2004). But the at-will employment doctrine is subject to a narrow public policy exception which provides a cause of action for employees terminated in retaliation for actions in furtherance of public policy. Boyle v. Vista Eyewear, Inc., 700 S.W.2d 859 (Mo. App. Ct. 1985). As recently adopted by the Missouri Supreme Court:

> An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities.

Fleshner v. Pepose Vision Institute, --- S.W.3d ----, 2010 WL 444885 (Mo. Feb. 9, 2010); Margiotta v. Christian Hosp. Northeast Northwest, --- S.W.3d ----, 2010 WL 444886 (Mo. Feb. 9, 2010). Further, the Fleshner court rejected the used of "exclusive causation" as the proper causal standard for the public-policy exception and now requires only a showing that the protected activity was a "contributing" factor in an employee's termination. Fleshner, 2010 WL 444885 at *9.

The Fleshner and Margiotta decisions were handed down after the parties had completed briefing defendant's motion for summary judgment. As such, defendant has not argued the issue of causation under this new standard. Although it altered the standard of causation to be used in public policy exception cases, the Missouri Supreme Court substantially adopted the case law that had been developed at the

appellate level and upon which the parties have briefed the remaining elements of plaintiff's case.  See Id at *7.  Because plaintiff has not shown that he engaged in any activities in furtherance of Missouri public policy which warrant protection under this narrow exception, the Court finds it unnecessary to consider whether plaintiff's alleged activities were a contributing factor in his termination.

An employee seeking recovery under the public policy exception must cite to specific statutory language as evidence of a violation of clear public policy.  "A wrongful discharge action must be based on a constitutional provision, a statute, a regulation based on a statute or a rule promulgated by a governmental body." Margiotta, 2010 WL 444886 at *3.  A violation of public policy need not affect the employee personally and the law violated need not prohibit or penalize retaliation against those reporting its violation.  Id. at *4.  But a '"mere citation" to a regulation without a demonstration of how the alleged conduct violated or would violate it cannot form the basis for a wrongful discharge action.  Id. at *3 (citation omitted).   There is no protection for an employee who "merely disagrees personally with an employer's legally-allowed policy."  Id.

Plaintiff's first claim alleges that he reported and his second claim alleges that he refused to participate in activities which would have resulted in the release of adulterated Naltrexone in violation the Food and Drug Act.  In both claims, plaintiff cites to 21 U.S.C. §351(2)(B)[1] as evidence of the public policy against the release of an adulterated substance.  The Court acknowledges that this statute sets forth a clear

---

[1] A drug is deemed adulterated if "the methods used in, or the facilities or controls used for, its manufacture, processing, packing, or holding do not conform to or are not operated or administered in conformity with current good manufacturing practice to assure that such drug meets the requirements of this Act as to safety and has the identity and strength, and meets the quality and purity characteristics, which is purports or is represented to possess."  21 U.S.C. §351 (a)(2)(B).

public policy against the distribution of adulterated substances, but is without sufficient evidence to find that any activities or requests by the defendant violated "good manufacturing practice" or any other standards referenced in 21 U.S.C. §351(2)(B).

Aside from his own conclusory testimony, plaintiff has not presented any evidence showing a violation of 21 U.S.C. §351(a)(2)(B). No expert testimony, case law or specific guidelines have been offered to support plaintiff's claim that a violation of this statute did occur or would have occurred. Plaintiff concedes that he never reported his claims to any regulatory agency, no investigation has occurred and no citation relating to these concerns has been issued. Plaintiff essentially relies upon his own good faith belief that actions he reported or refused to participate in were contrary to the law against releasing adulterated substances.

At least one Missouri court has held that an employee's good faith is insufficient to afford protection under the public policy exception. In Loomstein the plaintiff failed to show that the actions he refused to undertake would have in fact violated the cited statute. Loomstein v. Medicare Pharmacies, Inc., 750 S.W.2d 106, 114 (Mo. Ct. App. 1988). ("[e]ven assuming that [defendant] did demand him to do so, Loomstein would not have violated the law"). The court did not consider the plaintiff's good faith belief to be relevant or sufficient to support his claim. See id. However, in *Dunn v. Enterprise Rent-A-Car Co.*, 170 S.W.3d 1, 7 (Mo. Ct. App. 2005), the court found that a good faith belief that the employer was violating or would violate the law was sufficient to uphold a wrongful termination claim under the public policy exception.

In Dunn, the plaintiff's job included evaluating whether his employer would comply with acceptable accounting standards in connection with an SEC filing. The Dunn plaintiff warned his superiors that the company would not comply unless his proposed changes were adopted, and the defendant allegedly fired him for these

actions. The SEC filing was later delayed after the plaintiff's termination, at least partly due to plaintiff's concerns, although no violation actually occurred. The Dunn court cited this delay as evidence that plaintiff's belief that his or his employer's actions would be illegal was objectively reasonable. Id. at 10. Finally, the court found that preventing illegal activities which had not yet occurred, where plaintiff was acting on reasonable good faith, warranted protection under the public policy exception. Id. (finding no prior Missouri case law addressing this point).

Although Dunn is factually similar to this case, that court was able to rely upon evidence which tended to show that the employee's determination of illegality was reasonable. Plaintiff has not cited and this Court cannot find any instance where an employee's claim has been upheld without a minimum showing that employee's good faith belief was objectively reasonable. The reasonableness of an employee's belief of illegality has been supported by evidence that employer's actions were or would have been, in fact, unlawful. Alternately, evidence of an employer's lack of good faith that activities were illegal could show the reasonableness of the employee's good faith. Rephrased, evidence that the employer knew or should have known an activity was illegal has been present in every public policy action upheld in Missouri thus far. See Loomstein, 750 S.W.2d 106, 114 (good faith belief not reasonable); Dunn, 170 S.W.3d 1, 7 (evidence showed belief of illegality was objectively reasonable); Porter v. Reardon Mach. Co., 962 S.W.2d 932, 940-41 (Mo. App. Ct. 1998) (treating "proof that the activity [plaintiff] refused to perform was actually illegal or contrary to a strong mandate of public policy" as an element of an employee's public policy exception claim).

Also highly relevant, the Missouri Supreme Court, in adopting the public policy exception, emphasized that the employer's illegal intent was central to this narrow

exception and justified the use of the contributing factor causation standard.  See Fleshner,  2010 WL 444885;  Margiotta, 2010 WL 444886.  Without reference to the apparent conflict between Loomstein and Dunn, the Missouri Supreme Court declined to afford protection to activities gauged to prevent actions the employee "merely believes to be violations of the law or public policy."  Margiotta, 2010 WL 444886 at *5 (referring to plaintiff's burden of producing clear statutory language which supports the alleged violation of public policy).

Plaintiff's claim fails as a matter of law because he has not presented sufficient evidence to create a disputed fact as to whether his belief that he was preventing an illegal action was objectively reasonable.  Where two sides disagree in good faith as to the correct course of action with regard to complex and technical regulatory compliance, it is the regulatory agency,  not this Court, that will determine whether corporate actions comply.  See Id. Without a showing of bad faith or clear illegality, the policy justifications and benefits to the public emphasized by Missouri courts as the basis for this exception are not present.  Id. at *3 (requiring a "clear violation" and reiterating that  "[p]ublic policy is not to be determined by 'the varying personal opinions and whims of judges or courts'").

Plaintiff has also not offered admissible evidence to show that Tyco lacked a good faith belief that its activities were compliant.  Tyco possessed a high level of expertise with regard to FDA compliance and plaintiff's own testimony shows Tyco believed it actions to be in compliance with applicable regulations.  Although plaintiff attempts to interject inflammatory statements[2] allegedly made by co-workers to prove

---

[2]Plaintiff relies upon his deposition testimony that, "Eldon sent me and Marvin a memo saying why don't you close all of these validations and issue a new protocol whereby you bypass this temperature, whatever.  I don't know what the wording is but consider it validated, write the new protocol and proceed to cover up for what we've done." (Plaintiff's Dep. at 74, lines 21-23).  Defendant has moved to strike

-10-

that Tyco was acting in bad faith, his deposition testimony shows otherwise. The sum of plaintiff's admissible testimony shows that the protected activities he allegedly engaged in were a result of a difference in opinion between him and his supervisor Eldon Henson. Plaintiff essentially testified that Henson believed Tyco's actions were or could be made compliant while plaintiff believed they were deficient. Plaintiff also testified about statements made by other employees regarding the memo he allegedly instructed Marvin Darling write. These statements are largely inadmissible hearsay[3] and even if admitted, do not allow a reasonable inference of a clear violation as required under the Missouri public policy exception.

Plaintiff concedes in his deposition that reasonable minds may and often do disagree as to what constitutes an FDA violation. Plaintiff testified that raising concerns about compliance were common and encouraged within the Tyco quality group. To hold that plaintiff's activities warrant protection under the Missouri public policy exception would allow this narrow exception to swallow the general rule of at-will employment with respect to compliance employees. It would also intrude too far into the governance of corporate affairs where no bad faith or clear illegality has been shown on the part of employer. It is not the Court's responsibility to micro-manage

---

this statement as hearsay from an unproduced written document and plaintiff claims that it is admissible as a statement against party interest. Although plaintiff is correct that this is a statement against party interest, the Court finds the statement to be inadmissible because plaintiff has not overcome the multiple layers of hearsay associated with the statement which originates from an unproduced document. See Fed. R. Evid. 805, 1002.

[3]In his deposition, plaintiff testified that other Tyco employees said in reference to this memo that it is a "can of worms" and "what if the FDA sees that." (Plaintiff's Dep. at 57-58, 277, 288). These statements are inadmissible hearsay, as plaintiff fails to identify the person making the statement or to show that the employee was his superior so as to bring the statement within the admission of a party-opponent exception. See Page v. Fifth Third Bank, 2009 WL 2252557 (E.D. Mo. 2009); Yates v. Rexton, Inc., 267 F.3d 793 (8th Cir. 2001).

internal corporate compliance disagreements or protect unsuccessful whistle-blowers. Such a result would also run contrary to the public policy of Missouri.

Finally, defendant cites to several cases involving Minnesota law as support for withholding protected status to an employee's activities which are in the normal scope of employment. Skare v. Extendicare Health Services, Inc., 515 F.3d 836 (8th Cir. 2008) (applying Minnesota law); Freeman v. Ace Telephone Assn., 404 F.Supp 2d 1127 (D. Minn. 2005); Kidwell v. Sybaritic, Inc., 749 N.W. 2d 855 (Minn. App. Ct. 2008). Arguably this would exclude plaintiff's alleged activities from protected status, as his position required him to report and act upon compliance determinations on a daily basis. However, this scope of employment rule in these cases was based upon interpretation of a Minnesota statute protecting whistle-blowers, not on Missouri law. Further, this rule would seem to implicitly contradict the holding in Dunn discussed above. Dunn, 170 S.W.3d 1, 7. Although this Court finds merit in the reasoning of the decisions cited by defendant, such an exception has not been established in Missouri and will not be considered by this court.

In sum, this Court cannot rely upon plaintiff's unsupported contention that defendant's activities did or would violate a clearly established public policy. More is needed than plaintiff's own subjective belief that the termination of his employment constitutes a violation of public policy. This is especially true where complex and technical regulatory compliance is at issue and plaintiff's employment centered around compliance duties.

B. **Whistle-Blowing Claim.**

Even if plaintiff had produced sufficient evidence to show a violation of a clear public policy, his alleged whistle-blowing claim independently fails to constitute a protected activity under Missouri law. Although "internal" reporting of illegal actions

-12-

have been shown to constitute protected activity when reported to superiors regarding other employees, the Missouri Supreme Court has made clear that whistle-blowing to the "wrongdoer" does not constitute a protected activity. Fleshner, 2010 WL 444885 at *n.13. "An employee who is fired for informing his superiors of wrongdoing by *other* employees is entitled to bring suit." Id. (emphasis added) (citations omitted); See also Faust v. Ryder Commercial Leasing & Servs., 954 S.W.2d 383, 391 (Mo. App. Ct.1997) (reporting illegal conduct to the purported wrongdoer does not constitute whistle-blowing because the public policy of preventing past or recurring illegal conduct is not furthered).

Plaintiff alleges that he engaged in protected whistle-blowing by reporting activities he believed were illegal, specifically the release of adulterated product, to his superior. He also states that he instructed his subordinate to write a memo detailing problems with the Naltrexone validation process. While plaintiff attempts to construe each of these actions as whistle-blowing, he concedes that he never reported any of his concerns to any superior except Eldon Henson. Since he also claims that Eldon Henson was the person directing the illegal action which he was reporting, he does not satisfy the requirements that he both reported an illegal action to a superior and that it was with regard to activities by *other* employees. Finally, plaintiff acknowledges that defendant provided several avenues, including a confidential company ombudsman, for reporting employee concerns. Plaintiff concedes that he neither used these options for reporting his concerns within the company, nor attempted to report the alleged illegal activities to a third party.

In adopting the public policy exception, the Missouri Supreme Court emphasized that the activities protected must be in furtherance of a clearly stated public policy. See Fleshner, No. SC90032, 2010 WL 444885;  See Margiotta, No. SC90249, 2010 WL

-13-

444886. The justification behind the requirement that internal whistle-blowing must be to someone other then the wrongdoer reflects that such activities will be unlikely to stop or prevent damage to a clear and specific public policy. Thus, plaintiff's activities were not reasonably gauged to further Missouri public policy and do not warrant protection under the public policy exception.

### C. Refusal to Perform an Illegal Act

Plaintiff's refusal to perform an illegal act claim also fails, even if plaintiff had shown a clear violation of a stated public policy. Plaintiff argues that his "declining" to close the Naltrexone validation reports before his termination constitutes a refusal to perform an illegal act. (Plaintiff's Dep. at 74). He admits that he did not communicate this alleged refusal to his supervisor and that the Naltrexone validations were not mentioned during his termination. Even construing this as a "refusal," at least one Missouri court has declined to uphold an employee's cause of action where the employee's refused action was not directly linked to the stated public policy. Hess, 503 F. Supp. 2d 1178 at 1186-87.

Similarly, the causal link between plaintiff's conduct and the avoidance of the stated public policy violation is too weak to warrant protection under Missouri's public policy exception. See Id. at 1187 (dismissing plaintiff claim where he did not have any control over whether a violation would eventually occur and illegal act was performed by another employee). While plaintiff cites to the Food and Drug Act's mandate that adulterated substances not be released, he fails to show how his actions promoted this stated public policy. Plaintiff has testified that lots of Naltrexone which he believed were adulterated were "flooding the market" for more then a year prior to his discharge, but that another employee was responsible for release of the product. (Plaintiff's Dep. at 85). It is not contested that these lots were later considered

validated by other employees and that the interim reports were closed between two and six months after plaintiff's termination. These reports did not reflect the changes advocated by plaintiff. Plaintiff's actions were not sufficiently related to the release of adulterated product. As a result, encouraging activities which serve a public policy, the foundation for this narrow exception, is not implicated in this case.

In a final effort to bolster his case, plaintiff attempts to argue in his brief that signing the Naltrexone validation reports would have constituted fraud. But plaintiff failed to include this allegation in his complaint and cites to no authority supporting a clearly stated public policy. Absent these essential elements, the Court finds that plaintiff's claim that he was fired for refusing to commit fraud fails as a matter of law. Margiotta, 2010 WL 444886 at *3. For all of these reasons, defendant's motion for summary judgment is granted.

IV. Rule 11 Sanctions

Defendant has also filed a motion for sanctions against plaintiff and plaintiff's counsel which plaintiff opposes. Defendant moves for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, alleging that plaintiff's counsel did not perform a reasonable inquiry into the basis for plaintiff's allegations again defendant and that plaintiff's claims were lacking in evidentiary support, frivolous and an abuse of process. Defendant relies upon the now-defunct exclusive causation standard which has been abandoned in favor of the "contributing factor" standard in Missouri public policy exception cases. As discussed above, this new standard was adopted after plaintiff filed this lawsuit and after the parties had completed briefing defendant's motion for summary judgment. The remainder of defendant's motion claims that plaintiff's allegations were frivolous because his alleged protected activities were within the scope of his regular employment.

Rule 11(b) requires that an attorney conduct a reasonable inquiry as to the evidentiary support and legal basis for their client's claims. See Fed. R. Civ. P. 11(b). Rule 11(b)(2) provides that a plaintiff and their attorney may rely upon any "nonfrivolous argument for extending, modifying, or reversing existing law." Id. Rule 11 compliance is measured by an objective standard for reasonableness and subjective good faith alone is insufficient to avoid Rule 11 sanctions. Coonts v. Potts, 316 F.3d 745, 753 (8th Cir. 2003). However, a finding of bad faith is necessary to uphold an award of attorney's fees. See Stevenson v. Union Pacific R. Co., 354 F.3d 739 (8th Cir. 2004).

The Court finds that plaintiff and plaintiff's attorney have not violated the standard of conduct under Rule 11 and thus sanctions are inappropriate. As discussed in the preceding section, plaintiff argued for and anticipated the recent adoption of the contributing factor standard with respect to public policy exception cases. Under this standard, plaintiff has submitted a case which, if his activities had been protected, would have allowed a reasonable inference that his termination was at least partly based upon an illegal factor. Defendant's other argument, that plaintiff was merely acting within the scope of his employment, is not a rule recognized by Missouri law and cannot be a basis for claiming plaintiff's claims are frivolous.

Because plaintiff's claims were not frivolous under Rule 11 standards, plaintiff's counsel did not fail to conduct a reasonable inquiry before filing plaintiff's claims. Although the Court finds that plaintiff's claims are not sufficient to withstand defendant's motion for summary judgment, the evidence and law submitted by plaintiff falls well within the standard for reasonableness. Defendant's request for reasonable attorney's fees also fails under Rule 11 because defendant has not alleged, nor is there evidence to support, any bad faith on the part of plaintiff or plaintiff's counsel.

V. **Conclusion**

Plaintiff has failed to support his claims for wrongful termination based upon Missouri's public policy exception to at-will employment. The undisputed evidence, ignoring plaintiff's unsupported conclusory allegations, fails to show that plaintiff engaged in activities which warrant protection under a clearly stated public policy recognized by the State of Missouri. Defendant has not shown that plaintiff's claims were frivolous or that plaintiff acted in bad faith.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to strike [#39] is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment [#23] is **granted**.

**IT IS FURTHER ORDERED** that defendant's motion for sanctions [#21] is **denied**.

A separate judgment in accordance with this order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 1st day of April, 2010.